**SHANKS VILLAGE COMMITTEE AGAINST RENT INCREASES et al. v. CARY et al.**

United States District Court
S. D. New York.
March 10, 1952.
Order Vacated June 3, 1952.

Milton M. Carrow and Norman Annenberg, New York City, for plaintiffs.

Myles J. Lane, U. S. Atty. for Southern District of New York, New York City, for defendants. Earle N. Bishopp, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

McGOHEY, District Judge.

This is a motion for a temporary injunction. Plaintiffs are veterans who are citizens of the United States and residents of Shanks Village, a United States public housing project operated and managed by defendants in Rockland County, New York. On or about January 25, 1952, defendants sent plaintiffs notices to vacate their apartments by midnight on February 29, 1952, unless they agreed in writing to pay a 15% increase in rental commencing March 1, 1952. This suit is brought to declare the defendants' actions unlawful, beyond their powers, arbitrary, capricious and contrary to the laws of the United States. A permanent injunction is also sought. Stays have been granted pending the determination of this motion. For the reasons set forth below the motion is denied.

Plaintiffs claim that their occupancy may be terminated only in accordance with the laws of New York. This is controverted by defendants who cite Section 9 of the New York regulations.[1] Plaintiffs claim that the attempt to terminate their tenancy is in violation of their agreements of tenancy. This, also, is disputed by defendants and depends upon the construction to be given to paragraph 5(a) of the agreements. Finally, plaintiffs contend that in fixing the proposed increase the defendants disregarded the standard established by Section 1571 of Title 42 U.S.C.A., The Lanham

[1]. 65 McK. Unconsolidated Laws, Part 2, Appendix: Rent and Eviction Regulations of the Temporary State Housing Rent Commission:

"Section 9. Housing accommodations not subject to rent control. These Regulations shall not apply to the following:

"1. Housing accommodations owned by the United States * * *."

Act, which provides in part: " * * * the Administrator shall fix fair rentals for housing constructed or made available pursuant to this subchapter which shall be within the financial reach of families of servicemen and veterans with families." The notice of increase sent by the defendants reads: "We regret the necessity of having to advise you that increased operating costs require an increase in the rental charges for the dwelling you are presently renting."

Plaintiffs argue that the standard for fixing rent is "the financial reach" of the tenant and not "increased operating costs."

■ "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."[2] To my mind the notice quoted is not "clear evidence to the contrary." It seems to me that the court may take judicial notice of the fact that since the rentals at Shanks were established in 1947 there has been a general increase in wages, living costs, material and property values. It would seem to follow, therefore, that in accordance with the presumption of regularity, it is reasonable to infer that when defendants referred to "increased operating costs" they also had taken into account the general increase in wages since 1947. A general increase in wages might be sufficient basis upon which the defendants could act in increasing rentals. Surely, it is not clear that the statute requires the defendants in the first instance to make an individual investigation and determination of the "financial reach" of each tenant.

■ The burden is on plaintiffs to establish the necessity of injunctive relief. In support of the motion six plaintiffs have submitted affidavits stating that the proposed increase is beyond their means. There are, however, approximately 1400 tenants at Shanks and approximately 700 have agreed to pay the increased rental. This, to say the least, is some evidence that the defendants have acted reasonably with regard to the standard of "financial reach." And it is evidence that has not been overcome by plaintiffs' showing.

■ "It is a cardinal principle of equity jurisprudence that a preliminary injunction shall not issue in a doubtful case. Unless the court be convinced with reasonable certainty that the complainant must succeed at final hearing the writ should be denied."[3] There is substantial doubt here that plaintiffs' claim will be sustained either with regard to the asserted applicability of the New York rent law or their interpretation of the agreements of tenancy or the alleged failure of defendants to apply the applicable standard for determining a rent increase. "Plaintiffs' right to permanent relief is at this time, therefore, too much in doubt to warrant the issuance of an interlocutory injunction."[4]

It would seem, moreover, that plaintiffs' remedy at law is adequate. As yet defendants have done no more than serve the notices. If they should subsequently initiate eviction proceedings each of the plaintiffs would have the right to test defendants' action and to litigate the question of his particular "financial reach."

Finally, there is no showing of irreparable injury. Plaintiffs' apprehended injury is, from all that appears, easily susceptible of ascertainment in terms of money damages.

The motion for a temporary injunction is denied. The stay heretofore granted is vacated.

Settle order.

2. United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L. Ed. 131; United States v. Neelly, 7 Cir., 191 F.2d 997, 999.

3. Hall Signal Co. v. General Ry. Signal Co., 2 Cir., 153 F. 907, 908.

4. Atlantic & Gulf/West Coast v. United States, S.D.N.Y., 90 F.Supp. 554, 555.