******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ECKER, J., with whom D'AURIA, J., joins, concurring in part and dissenting in part. I agree with parts I, II A, and II B of the majority opinion, in which the majority concludes that the plaintiff, Not Another Power Plant, has standing to bring this appeal and did not waive its claim that the trial court incorrectly determined that the refusal of the named defendant, the Connecticut Siting Council (council), to consider the environmental impact of the future gas pipeline was legally erroneous, and that the council proceeded under the legally errone-ous belief that the relevant provisions of the Public Utility Environmental Standards Act (act), General Stat-utes § 16-50g et seq., precluded it from considering the environmental impact of the future gas pipeline when balancing the public benefit of the proposed electric generating facility against the harm that it will cause to the environment. Unlike the majority, however, I believe that this latter holding requires us to reverse the judgment of the trial court and to remand the pres-ent case to that court with direction to remand it to the council to reconsider its approval of the application filed by the defendant NTE Connecticut, LLC (NTE), in light of its discretion to consider the potential envi-ronmental impact of the future gas pipeline. For that reason, I respectfully dissent in part.

The majority correctly observes that General Statutes § 4-183 (j) (6) requires a court to affirm an agency deci-sion unless it finds " 'that substantial rights of the person appealing have been prejudiced because the administra-tive findings, inferences, conclusions, or decisions are . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discre-tion.' "[1] Part II B of the majority opinion. My agreement with the majority opinion, as I stated, also includes the conclusion that the council erroneously construed the act to prohibit it from considering the potential environ-mental impact of the gas pipeline in the underlying proceedings. That is, the council reached a decision in this matter while laboring under the legally mistaken understanding that it could not exercise its discretion to deny or defer consideration of the pending applica-tion on the basis of the cumulative environmental impact of the electric generating facility and the future gas pipeline on which the operation of that facility will depend. To the contrary, as the majority concludes, "the act did not prohibit the council from considering an interdependent facility that does not yet exist [namely, the pipeline] when balancing the public benefit that will be provided by a proposed facility against the harm that it will cause to the environment." Id.

My agreement with the majority ends there because,

in my view, the council's "failure to exercise its discretion constituted an abuse of discretion." *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986); see also *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 609, 181 A.3d 550 (2018) (remand for hearing was appropriate "because the trial court improperly failed to exercise its discretion" (internal quotation marks omitted)); *Costello* v. *Goldstein & Peck, P.C.*, 321 Conn. 244, 256, 137 A.3d 748 (2016) ("the court's failure to recognize its authority to act constituted an abuse of discretion"). When an administrative agency does not recognize or exercise its discretion due to a misinterpretation of a rule or statute, it abuses that discretion. In other words, an agency, "vested with discretion, abuses that discretion when it behaves as if it has no other choice than the one it has taken, or when it makes a decision for which there is not adequate support." *Bennington Housing Authority* v. *Bush*, 182 Vt. 133, 139, 933 A.2d 207 (2007); see also *Fisher* v. *Commissioner for Internal Revenue*, 45 F.3d 396, 397 (10th Cir. 1995) (tax commissioner "failed to demonstrate that she had exercised her discretion and thereby abused that discretion"); *United States ex rel. Adel* v. *Shaughnessy*, 183 F.2d 371, 372 (2d Cir. 1950) ("[t]he courts cannot review the exercise of such discretion; they can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion" (footnote omitted)); *Litterer* v. *Judge*, 644 N.W.2d 357, 362 (Iowa 2002) ("an agency that has authority to act but fails to exercise that authority based [on] a false belief that there is no such authority abuses its discretion"); *Clark Fork Coalition* v. *Dept. of Environmental Quality*, 347 Mont. 197, 209, 197 P.3d 482 (2008) ("when an agency, because of a misinterpretation of its rule, does not exercise its discretion it abuses its discretion"); 3 H. Koch & R. Murphy, Administrative Law and Practice (3d Ed. 2021) § 9:27 [4] ("[f]ailure to exercise discretion might be an abuse of discretion"); 73A C.J.S. 322, Public Administrative Law and Procedure § 416 (2004) ("[a]n agency that has authority to act but fails to exercise that authority based upon a false belief that there is no such authority abuses its discretion").

The majority concludes that, notwithstanding the council's failure to exercise its discretion, the council did not arbitrarily and capriciously refuse to consider the potential environmental impact of the gas pipeline because that impact will be considered in a future proceeding at which "the council must find either that the pipeline will have no significant adverse environmental impact or that its impact, considered together with the impact of other existing facilities, is outweighed by the public benefit that it will provide." Part II C of the majority opinion. It is true that the council could have arrived at the very same result in the proper exercise of its discretion. But that is not the standard by which error is measured in this context. Although the council

*could have* arrived at the same conclusion had it been aware of its discretionary authority, and nonetheless decided to defer consideration of the pipeline's environmental impact until a future proceeding on an application seeking a certificate for that pipeline, it *also* could have decided to consider the impact of the two interrelated projects in a single proceeding. That is the point. The council had the discretion to choose either course, but it was not aware of its discretion and erroneously believed that it had no choice.

We do not know what the council would have chosen to do if it had exercised its discretion, and we must remand the matter to the council so that it may decide whether to consider the environmental impact of the future gas pipeline when weighing the public benefit of the proposed electric generating facility against its probable environmental impact under § 16-50g.[2] See *Miami Nation of Indians of Indiana, Inc.* v. *United States Dept. of the Interior*, 255 F.3d 342, 350 (7th Cir. 2001) (administrative agency's "[f]ailure to exercise discretion, however uncanalized that discretion, is an abuse of discretion," and "the remedy is to remand for the exercise of that discretion"), cert. denied sub nom. *Miami Nation of Indians of Indiana, Inc.* v. *Norton*, 534 U.S. 1129, 122 S. Ct. 1067, 151 L. Ed. 2d 970 (2002); *United States ex rel. Adel* v. *Shaughnessy*, supra, 183 F.2d 372 n.3 ("[i]n such a case, the court can do no more than to require that the discretion be exercised, one way or the other"); *Davenport* v. *Newcomb*, 820 N.W.2d 882, 892 (Iowa App. 2012) ("[w]hen there is error based on an agency's failure to exercise discretion, the remedy is to reverse and remand to the agency for consideration"). Accordingly, I would reverse the judgment of the trial court with direction to remand the case to the council for further proceedings consistent with this opinion.

[1] As the majority states, de novo review is appropriate here because the agency's interpretation of the relevant statutory provisions is not "time-tested . . . ." (Internal quotation marks omitted.) Part II B of the majority opinion.

[2] The majority acknowledges that, "ordinarily, an agency's failure to exercise its discretion because of a mistaken understanding of the law constitutes an abuse of discretion." Footnote 14 of the majority opinion. It concludes nevertheless that a remand is not required under the specific circumstances of the present case because "the result [of a remand] would be the functional equivalent of the situation as it now stands: the cumulative environmental impact of the electric generating facility and the pipeline would be considered during the proceedings on the pipeline unless it were determined that the pipeline will have no substantial adverse environmental effect and, if the pipeline were not approved, NTE would be unable to complete the electric generating plant and the site would be restored." Id. Perhaps, but perhaps not. As the majority observes, the council would have various options on remand, and its selection among those options (or its choice of some other option that we have not identified) may, as a practical or legal matter, significantly change "the situation as it now stands" in one way or another. Id. Timing and sequencing can matter a great deal in matters of regulatory approval. If that were not true, then the parties in the present case presumably would not have a dispute over the outcome of this appeal because it would make no difference to them whether the council's review of the cumulative environmental impact comes now or in a future proceeding. The bottom line is that the council, and not this court, possesses the information, the expertise, and the legal obligation to exercise its best

judgment based on its own careful assessment of all of the pertinent considerations permitted by law—including, if it so chooses, the factor that the council mistakenly believed was off limits in the prior proceeding, namely, the environmental impact of the future gas pipeline. This court is ill-equipped to hypothesize what the council will do on remand or to speculate whether the consequences that flow from the agency's future determination, after remand, will be the "substantial equivalent" of the situation "as it now stands" pursuant to a legally erroneous prior decision. Id.; cf. *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 379, 194 A.3d 759 (2018) ("Under the [Uniform Administrative Procedure Act], it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.))

—————————————————